# EXHIBIT 1



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
August 30, 2021 02:51 PM
       AFTAB PUREVAL
      Clerk of Courts
    Hamilton County, Ohio
   CONFIRMATION 1103769
```

**MARK A BUCKLEY**              **A 2103051**

**vs.**
**US BANK NATIONAL**
**ASSOCIATION**

### FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

### PAGES FILED: 8

EFR200


VERIFY RECORD

Elizabeth Asbury Newman (0096921)<br>
Kelly Mulloy Myers (0065698)<br>
Trial Attorneys for Plaintiff

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **MARK A. BUCKLEY,**<br>10225 Hamlet Court<br>Union, KY 41091 | : <br> : <br> : <br> : | Case No.: _____ <br><br> Judge: _____ |
| Plaintiff, | : <br> : | |
| v. | : <br> : | |
| **U.S. BANK**<br>**NATIONAL ASSOCIATION,**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | : <br> : <br> : <br> : <br> : <br> : | **COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON** |
| Defendant. | : | |

## **PARTIES**

1.      Plaintiff Mark Buckley is a citizen and resident of the Commonwealth of Kentucky.

2.      Defendant U.S. Bank National Association ("US Bank") is a national bank headquartered at 800 Nicollet Mall, Minneapolis, Minnesota 55402. Its principal place of business in Ohio is located at 425 Walnut Street, Cincinnati, OH 45202.

## **JURISDICTION AND VENUE**

3.      This Court has jurisdiction, and venue is proper in Hamilton County, as the actions complained of took place within Hamilton County, Ohio.

4.      The amount in controversy exceeds the jurisdictional minimum for the Court of Common Pleas.

1

**FACTUAL ALLEGATIONS**

5. Plaintiff Mark Buckley has been employed twice by US Bank, working first from October 19, 2008 to July 21, 2017.

6. Over the course of those nine years, Mr. Buckley received numerous promotions, working his way up from teller to branch manager.

7. Mr. Buckley was recruited back to the Bank, working again as branch manager from February 17, 2020 to July 8, 2020.

8. At the time of his termination, Mr. Buckley held the position of Branch Manager of the Norwood, Ohio branch (no. 513-458-5200), located at 4525 Montgomery Road.

9. As Branch Manager, Mr. Buckley reported to Christopher Sullivan, District Manager, and Braden Meador, Hub Manager.

10. Shortly after Mr. Buckley began managing the Norwood branch, the coronavirus pandemic reached the Cincinnati area.

11. In the early months of the pandemic, local, state, and federal governments struggled to provide clear guidance to employers and workers. This guidance was confusing and even conflicting at times. As the situation and scientific understanding evolved, government guidance shifted.

12. On March 9, 2020, the Ohio Department of Health confirmed that three patients had tested positive for Covid-19 in Ohio. Later that day, Ohio Governor Mike DeWine signed an executive order announcing a state of emergency.

13. On March 22, 2020, Governor DeWine issued a "Stay at Home" order. Essential businesses, including banks, were permitted to remain open. The order instructed essential businesses to engage in the then-novel concept of social distancing.

14. On April 2, 2020, Amy Acton, the Director of the Ohio Department of Health, issued an amended "Stay Safe Ohio" order with new rules for businesses that remained open.

15. April 27, 2020, Governor DeWine issued a state-wide mask mandate for customers and employees, only to nullify the mandate as to customers the following day. Then, on April 29, 2020, Governor DeWine introduced a number of exceptions for employees.

16. As Branch Manager, Mr. Buckley tried to interpret and implement ever-shifting guidance from government agencies and his employer.

17. On June 8, 2020, an employee at the Norwood Branch left work saying that she felt sick. Because this employee frequently called in sick, Mr. Buckley had no particular cause for alarm.

18. This employee had no diagnosis and did not know what she had at the time she left work. As a precaution, she got a Covid-19 test. She received a positive test result on June 15, 2020.

19. Between June 8 and 15, Defendant did not ask that Mr. Buckley self-isolate, nor did Defendant provide coverage for managing the branch. In other words, Defendant expected Mr. Buckley to work, so he did.

20. Mr. Buckley began quarantining at the end of his shift as soon as this employee told him she had tested positive on June 15.

21. At Defendant's request, Mr. Buckley got tested for Covid. He received a positive test result on June 18, 2020.

22. During Mr. Buckley's quarantine, he made numerous inquiries regarding the enforcement of the company's Covid policies.

23. On June 10, 2020, Defendant informed employees that they had to return to work after a positive Covid test seven days from the onset of symptoms plus three days from last fever.

3

24. On May 3, 2020, however, the Center for Disease Control changed its recommendation to returning to work ten days after the onset of symptoms plus three days from last fever.

25. Throughout the spring, Mr. Buckley emailed Elizabeth Jude, his HR Business Partner at US Bank, to ask about the Bank's Covid policies and how they should be implemented, including questions about the Bank's policy with respect to social distancing.

26. Ms. Jude did not always respond to Mr. Buckley's emails; sometimes, she would brush off his inquiries. Mr. Buckley tried to make do without clear direction from HR.

27. On June 16, 2020, Mr. Buckley emailed Ms. Jude again to clarify the Bank's policies now that Covid had arrived at his branch.

28. Ms. Jude replied that he and his two infected employees had to return to work after seven days—three days earlier than the CDC guidelines advised.

29. Mr. Buckley emailed Ms. Jude again on June 21, 2020, explaining that US Bank's policy was out of step with the CDC guidelines.

30. Mr. Buckley also sought guidance on the Bank's policy with respect to social distancing. He understood the Bank's policy at that time to require an employee to wear a mask if they were within 6 feet of someone else for 30 minutes or more.

31. However, after reading the guidance on the CDC website, he reached out to Ms. Jude again. She said that the policy was that an employee had to wear a mask if they were 6 feet or closer to someone, regardless of duration.

32. Upon Mr. Buckley's return, he clarified the policy to his employees that they needed to have masks on at all times.

33. Just two weeks after he had complained that the Bank's policies did not comply with the CDC, Ms. Jude began to investigate Mr. Buckley for his own Covid policy enforcement.

4

34. Ms. Jude claimed that the investigation stemmed from a complaint by Matthew Clifton, an employee from another branch who was providing coverage on June 15.

35. Mr. Clifton reported that another employee was not wearing a mask on that day.

36. Despite the specificity of Mr. Clifton's complaint, Ms. Jude took it as an opportunity to retaliate against Mr. Buckley. She combed through surveillance video from the Norwood branch going back to May 26, the day that Defendant's mask mandate went into effect, to find footage of him not wearing a mask for a few minutes.

37. On July 3, 2020, an HR investigator interviewed Mr. Buckley. She asked him whether the employee in question had been wearing a mask on June 15, and he answered honestly that he did not remember.

38. The investigator rejected Mr. Buckley's answer, requiring a yes or no. Eventually Mr. Buckley said that he thought this employee had been wearing a mask. He was not given an opportunity to review the video.

39. Mr. Buckley went on to tell the investigator that he thought that he had been following the policy, but once it was clarified to him while he was on sick leave, he came back and corrected the employees' understanding and immediately followed the Bank's policy.

40. Defendant fired Mr. Buckley on July 8, 2020. When firing Mr. Buckley, Christopher Sullivan, District Manager, claimed that the employee not wearing a mask on June 15 was the reason for his termination.

41. Upon information and belief, Defendant did not discipline the employee for not wearing a mask.

42. Mr. Buckley had never been so much as written up before in his 9+ years with Defendant.

43. Upon information and belief, the managers of other branches where masks were inconsistently worn, branches that shut down multiple times because of an outbreak, and branches where all employees were quarantined were not terminated.

## COUNT I
### Family & Medical Leave Act - Retaliation

44. Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

45. Mr. Buckley was an eligible employee as defined by 29 U.S.C. § 2611.

46. Defendant was a covered employer as defined by 29 U.S.C. § 2611.

47. Mr. Buckley had a serious health condition when he contracted Covid-19 shortly before June 15, 2020, when he tested positive for the virus.

48. Mr. Buckley took leave for his serious health condition from June 16, 2020 to July 7, 2020.

49. Mr. Buckley was entitled to leave to care for his serious health condition pursuant to 29 U.S.C. § 2612.

50. Defendant retaliated against Mr. Buckley for exercising his right to leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., by, without limitation, exploiting a complaint against another employee to investigate Mr. Buckley, and by terminating Mr. Buckley's employment within days of his return from leave.

51. Defendant acted with malice and/or reckless indifference to Mr. Buckley's federally protected right to take leave pursuant to the FMLA.

52. As a result of Defendant's violation of the FMLA, Plaintiff has suffered damages and is entitled to relief.

## COUNT II
### Termination in violation of public policy

53. Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

6

54. Federal law prohibits retaliation against employees for reporting their employers' noncompliance with Covid regulations or with health and safety regulations more generally. These laws include: the Families First Coronavirus Response Act, passed on March 18, 2020, which prohibits employers from retaliating against employees for taking medical leave for themselves or their family under both the Emergency Family and Medical Leave Expansion Act and the Emergency Paid Sick Leave Act; as well as the Occupational and Safety Health Act of 1970, which prohibits employers from retaliating against employees who report unsafe working conditions.

55. Dr. Acton's April 2, 2020 order enabled Ohioans to report businesses for violating the order or not observing proper safety measures.

56. Both the Ohio Department of Health and Hamilton County Public Health created a complaint process to report Covid-related violations at retail and non-retail establishments.

57. Individually and collectively, these statutes and regulations create a clear public policy against firing employees for escalating Covid-compliance concerns.

58. Defendant terminated Mr. Buckley from his employment because he notified Defendant of its noncompliance with Covid return-to-work guidance.

59. Dismissing employees for reporting violations of law and public policy jeopardizes the effectiveness of the public policy, as there is a lack of privately enforceable remedy for Mr. Buckley under these sources of public policy.

60. Defendant had no overriding legitimate business justification for dismissing Mr. Buckley.

61. Defendant's actions were intentional, willful, wanton, malicious, and in conscious disregard for Mr. Buckley's rights.

62. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Mr. Buckley has been injured and is entitled to damages.

**WHEREFORE**, Plaintiff Mark A. Buckley requests relief against Defendant as follows:

    a)    That Plaintiff be reinstated to his employment;

    b)    That Plaintiff be awarded all lost pay and benefits;

    c)    That Plaintiff be awarded compensatory damages;

    d)    That Plaintiff be awarded liquated damages;

    e)    That Plaintiff be awarded punitive damages;

    f)    That Plaintiff be awarded reasonable attorney's fees and costs;

    g)    That Plaintiff be awarded pre-judgment and post-judgment interest;

    h)    That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than compensation over separate tax years; and

    i)    That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

 

Respectfully submitted,

*/s/ Elizabeth Asbury Newman*
Elizabeth Asbury Newman (0096921)
Kelly Mulloy Myers (0065698)
Trial Attorneys for Plaintiff
FREKING MYERS & REUL
600 Vine Street, Ninth Floor
Cincinnati, OH 45202
PH: 513-721-1975 | FAX: 513-651-2570
*enewman@fmr.law*
*kmyers@fmr.law*

## JURY DEMAND

Plaintiff hereby demands a trial by jury of this matter.

*/s/ Elizabeth Asbury Newman*

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

MARK A BUCKLEY
    **PLAINTIFF**

    -- vs --

Use below number on
all future pleadings

No. A 2103051
SUMMONS

US BANK NATIONAL ASSOCIATION
    **DEFENDANT**

    US BANK NATIONAL ASSOCIATION
    4525 MONTGOMERY ROAD      D - 1
    CINCINNATI OH 45212

You are notified
that you have been named Defendant(s) in a complaint filed by

    MARK A BUCKLEY
    10225 HAMLET COURT
    UNION KY 41091

    Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET    ROOM 315,**
**CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he/she has no attorney of record, a copy of an answer to the complaint within twenty-eight (28) days after service of this summons on you, exclusive of the day of service. Your answer must be filed with the Court within three (3) days after the service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered against you for the relief demanded in the attached complaint.

Name and Address of attorney
ELIZABETH NEWMAN
FREKING MYERS & REUL LLC
600 VINE STREET, NINTH FLOOR
CINCINNATI      OH      45202

AFTAB PUREVAL
Clerk, Court of Common Pleas
    Hamilton County, Ohio

By   RICK HOFMANN
                              Deputy

Date:    August 31, 2021

D132823427


VERIFY RECORD